IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHANCE CLYCE, ET AL.,           §
                                §
            Plaintiffs,          §
                                §
V.                               §          No. 3:15-cv-793-S-BN
                                §
NADINE BUTLER, ET AL.,          §
                                §
            Defendants.          §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States magistrate judge for pretrial

management under 28 U.S.C. § 636(b) and a standing order of reference from United

States District Judge Karen Gren Scholer. *See* Dkt. No. 71.

The United States Court of Appeals for the Fifth Circuit reversed the Court's

September 14, 2015 judgment dismissing this action with prejudice as barred by the

applicable statute of limitations and remanded this action to this Court for further

proceedings, including consideration of res judicata and other issues presented. *See*

*Clyce v. Butler*, 876 F.3d 145 (5th Cir. 2017) (per curiam).

Following remand, the Court, on January 5, 2018, required the remaining

defendants, *see* Dkt. No. 54 (the Fifth Circuit's order granting the unopposed motion

to dismiss Nadine Butler, Lesly Jacobs, Kevin Dubose, Conrad Jones, Texas Juvenile

Justice Department, David Reilly, and Unknown Staff at the Texas Juvenile Justice

Department), to supplement their briefing as to the remaining grounds that support

dismissal of this action and allowed the plaintiffs leave to file briefs in response, *see*

Dkt. No. 57. Defendants Frederick Farley, Kenneth Wright, and Shanigia Williams filed their brief on February 5, 2018, re-urging the dismissal of this action as barred by res judicata. *See* Dkt. No. 63.

Rather than file a response brief, Plaintiffs Chance Clyce, Donna Clyce, and Mark Clyce, though counsel, moved for leave to amend their complaint, and that motion was accompanied by the required joint status report. *See* Dkt. Nos. 64 & 65. In the proposed amended complaint [Dkt. No. 65-2], Chance alone brings claims only against Defendants Hunt County Juvenile Detention Center, Kenneth Wright, and Shangia Williams. But the Court deferred consideration of the motion until its receipt and review of the plaintiffs' supplemental briefing. *See* Dkt. No. 66; *see also Clyce*, 876 F.3d at 148 n.1 ("Initially, Chance's parents were also joined as plaintiffs, and all three parties sought class certification to proceed both individually and on behalf of those similarly situated. On appeal, however, Chance is the sole appellant and he pursues his claims in his individual capacity only.").

Chance moved the Court to reconsider that order. *See* Dkt. No. 67. And reconsideration was granted in part – "in that [the plaintiffs'] supplemental briefing ... may address res judicata as applied to the claims as presented in the proposed amended complaint." Dkt. No. 68. Chance then filed a supplemental response. *See* Dkt. No. 69. And Wright, Williams, and Farley filed a reply with leave of the Court. *See* Dkt. No. 70.

The undersigned enters these findings of fact, conclusions of law, and recommendation that, for the reasons explained below, the Court should deny leave to

amend the complaint and dismiss this action with prejudice.

## Applicable Background

As the Fifth Circuit put it:

> In 2008, when he was thirteen years old, Chance suffered serious and sustained injuries while detained at Hunt County Juvenile Detention Center. Though some of the details are disputed, the parties agree that when Chance was released from the Detention Center only sixteen days after he arrived, he had lost several pounds, sustained bruises and a fractured arm, and contracted a life-threating methicillin-resistant staphylococcus aureus ("MRSA") infection. Due to this severe infection, Chance required multiple extensive surgeries on his joints and heart. He asserts that he continues to suffer chronic pain and will require future surgeries.
>
> In 2009, Chance's parents filed suit both individually and as his next friends against multiple defendants affiliated with the Detention Center, bringing claims under 42 U.S.C. § 1983 and the Texas Torts Claims Act. The district court dismissed claims against two of the defendants without prejudice for improper service and granted summary judgment in favor of the remaining defendants. Chance's parents appealed to this court, and we affirmed. *Clyce v. Hunt Cty.*, 515 F. App'x 319, 321 (5th Cir. 2013).
>
> On June 24, 2014, Chance, then nineteen years old, filed the instant claims pro se against multiple defendants from the Detention Center and the Texas Juvenile Justice Department. Of these defendants, only one of them, Shanigia Williams, was also named as a defendant in 2009, when the claims against her were dismissed without prejudice for lack of service.
>
> In this second lawsuit, Chance brought some of the same claims his parents brought in the first lawsuit, as well as a number of additional claims. He asserted that the defendants subjected him to inhumane conditions, denied him required medical treatment, participated in a civil conspiracy by failing to report systematic abuse at the detention center, violated his due process and equal protection rights, and discriminated against him based on his diagnosed mental illness in violation of the Americans with Disabilities Act and the Rehabilitation Act.

*Clyce*, 876 F.3d at 147-48 (footnote omitted).

Although the Fifth Circuit reversed this Court's dismissal of the second lawsuit

on the basis "that Chance forfeited the protection of Texas's tolling provision when his parents brought suit as next friends," this "conclusion does not permit Chance to re-litigate the merits of any already decided claims. The doctrine of res judicata has long served to ensure the conclusive effect of final judgments. Texas's tolling provision 'does not mean that an action commenced by, or on behalf of, a legally disabled individual can never be given preclusive effect.'" *Id.* at 150 (citing *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992), then quoting *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 756 (Tex. 1993)).

### Legal Standards and Analysis

"The preclusive effect of a prior federal court judgment is controlled by federal res judicata rules." *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000) (citations omitted); *accord Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1265 (5th Cir. 1990). Those rules bar

> "the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). In the Fifth Circuit, res judicata is appropriate if four conditions are met: (1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits. *Id.*, *see also Ellis*, 211 F.3d at 937.

*Chalmers v. City of Dallas*, No. 3:14-cv-36-N, 2014 WL 7174289, at *6 (N.D. Tex. Dec. 16, 2014) (citation modified).

First, Chance, who appears to be the sole remaining plaintiff, does not question that the second and third conditions are met here. *See, e.g.*, Dkt. No. 63 at 7.

-4-

Taking up the fourth condition next, courts in this circuit use "a 'transactional test,'" under which "[t]he critical issue is whether the two suits are based on the 'same nucleus of operative facts.'" *Chalmers*, 2014 WL 7174289, at *6 (quoting *Test Masters*, 428 F.3d at 571); *see Test Masters*, 428 F.3d at 571 ("Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose." (citing *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395-96 (5th Cir. 2004))); *see also Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 522 (5th Cir. 2016) ("True *res judicata* bars recovery when a party seeks to relitigate the same facts even when the party argues a novel legal theory." (citing *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994))); *Alexander v. Hood for State of Miss.*, No. 3:16-cv-00202-GHD-JMV, 2017 WL 3585470, at *3 (N.D. Miss. Aug. 16, 2017) ("[T]he transactional test is [ ] met ... [if] the claims could or should have been brought in the first action. From Plaintiff's factual allegations in all three cases, it is clear that Plaintiff had notice of the facts giving rise to these claims at the time of the first case and that the Section 1983 claims could have been ruled on by that Court.").

Although Chance now advances legal theories not made in the first action, the transaction at issue in both cases is Chance's detention at the Hunt County Juvenile Detention Center in February and March of 2008 – which means that Chance "had notice of the facts giving rise to these claims at the time of the first case and that the [current] claims could have been ruled on by that Court." *Alexander*, 2017 WL 3585470,

-5-

at *3. All claims, regardless of their nature or against whom they are asserted, therefore emanate from the same nucleus of operative facts.

The undersigned now turns to the most difficult issue here: privity. While this concept "has shown itself to be [both] elusive and manipulable," privity "is nothing more than a 'legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion.'" *Meza*, 908 F.2d at 1266 (quoting *Southwest Airlines v. Texas Int'l Airlines*, 546 F.2d 84, 95 (5th Cir. 1977)); *see Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 798 (1996) ("[T]he term 'privity' is now used to describe various relationships between litigants that would not have come within the traditional definition of that term." (citation omitted)); *see also EEOC v. Jefferson Dental Clinics, PA*, 478 F.3d 690, 694 n.1 (5th Cir. 2007) (Under Texas law, "[p]rivity for res judicata purposes, ... represents the court's conclusion regarding the character of the relationship between two parties with respect to previously litigated issues." (citing *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996) ("To determine whether subsequent plaintiffs are in privity with prior plaintiffs, we examine the interests the parties shared."))); *but see Sims v. City of Madisonville*, Civ. A. No. H-14-2145, 2015 WL 4040575, at *8 (S.D. Tex. July 1, 2015) ("Texas preclusion law ... imposes a more demanding privity standard." (citations omitted)).

Before considering the proposed amended complaint, four of the remaining parties on the record here were technically not parties to the first action – Chance, now in his individual capacity; Williams, named but never made a party to the first-filed

action; Wright; and Farley. The proposed amended complaint drops Farley but continues with a claim against the "Hunt County Juvenile Detention Center" – identified as "organized under the laws of the State of Texas," Dkt. No. 65-2 at 3, without explaining how this defendant is related to the Hunt County Juvenile Board, a defendant in the first action that was identified as "a specialized local entity that establishes the official policy of the Hunt County Juvenile Detention Center" and "is responsible for the implementation of the policies, procedures, practices and customs, and the acts/omissions challenged by [the first] suit," Dkt. No. 63-1 at 4.

The undersigned will therefore consider whether each of these parties – all strictly speaking non-parties to the first action – is "sufficiently close" to "a party on the record" in that action "to afford application of the principle of preclusion." *Meza*, 908 F.2d at 1266.

In *Meza*, the Fifth Circuit remarked that, "[f]or res judicata purposes, this court has held that privity exists in just three, narrowly-defined circumstances: (1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit." *Id.* (citing *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 188 (5th Cir. 1990); *Southwest Airlines*, 546 F.2d at 95); *accord Amstadt*, 919 S.W.2d at 653. The third category is at issue here. *See Taylor v. Sturgell*, 553 U.S. 880, 893-95 (2008) ("Though hardly in doubt, the rule against nonparty preclusion is subject to exceptions. For present purposes, the recognized exceptions can be grouped into six categories.... [The third being] that, 'in

certain limited circumstances,' a nonparty may be bound by a judgment because she was 'adequately represented by someone with the same interests who was a party' to the suit. Representative suits with preclusive effect on nonparties include properly conducted class actions, and suits brought by trustees, guardians, and other fiduciaries." (citations and original brackets omitted)); *cf. id.* at 893 n.6 (noting that the six categories listed there were "meant only to provide a framework ... , not to establish a definitive taxonomy").

Chance, then a minor, was not himself a plaintiff to the first action but was represented there by his mother and his father, each as a next friend and both proceeding with counsel. *See* Dkt. No. 63-1 at 4. Chance does not now argue that Donna and Mark failed to represent his rights and interests in the first action or that his rights and interests there were not identical to Donna's and Mark's. Nor would the record of that action support either argument – Donna and Mark, standing-in as next-friend guardians, with the assistance of counsel, vigorously pursued the first action on behalf of Chance in this Court, on appeal to the Fifth Circuit, and by petitioning the Supreme Court for certiorari. Thus, the relationship between Donna and Mark and Chance supports a finding of privity. *See Taylor*, 553 U.S. at 894-95; *Meza*, 908 F.2d at 1266; *Amstadt*, 919 S.W.2d at 653; *cf. Ingram ex rel. Ingram v. Ainsworth*, 184 F.R.D. 90, 92 (S.D. Miss. 1999) (noting that, in next-friend suits, "the overarching policy concern is that a court protect the interests and rights of the allegedly incompetent individual," and the interests of an incapacitated minor and his self-appointed next friend may not always align, but, "[m]ore commonly, a next friend or

guardian acts consistently with the interests of the incompetent party" (citation omitted)).

Chance's current situation is distinct from a party who brings the first suit in one capacity and the second suit in a separate capacity – for example, had Donna and Mark first sued in their individual capacities only and then filed this action only as next friends of Chance – in which case, "[u]nder this circuit's precedent, the identity-of-the-parties element [would] not [be] met." *Johnson v. City of Houston*, 444 F. App'x 26, 31 (5th Cir. 2011) (per curiam) (citing *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 973 (5th Cir. 1986) ("Res judicata does not apply to a situation ... in which a party appears in one action in an individual capacity and in a subsequent action in a representative capacity.")); *see id.* ("Johnson did not bring her § 1983 claims in *Johnson I* in her individual capacity. Although she brought her state negligence claims individually, she brought the Fourteenth Amendment claims as executrix of Rodney's estate. By contrast, she brings her current claims in her individual capacity."); *see also Baloco v. Drummond Co., Inc.*, 767 F.3d 1229, 1251 n.31 (11th Cir. 2014) (distinguishing *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860 (5th Cir. 1985) – in which "the plaintiff initially brought an action for his own injuries suffered as a result of an automobile accident in which his infant daughter was killed," and, "[a]fter an adverse judgment in the first suit, the father filed a wrongful death action on behalf of his daughter's mother and siblings for their injuries as a result of the daughter's death," where the Fifth Circuit "found that res judicata was inappropriate 'for close family relationships are not sufficient by themselves to establish privity with the original

suit's party, or to bind a nonparty to that suit by the judgment entered therein'" – "We read *Freeman* as standing for the proposition that a claimant suing in his individual capacity in the first action is not precluded from pursuing a later cause of action as the beneficiaries' legal representative. Unlike in *Freeman*, where the only beneficiary to Freeman's claim for his own injuries was Freeman himself, here, the Original and the New Children were both beneficiaries of the claims asserted in *Drummond I*. Therefore, the adverse judgment in *Drummond I* binds all of them; more specifically, it precludes the New Children's claims in the instant action. Notwithstanding Plaintiffs' implicit proposition to the contrary, the substantive legal relationship inquiry turns on the relationship between the parties and not on the alignment of the types of damages available under the theories of recovery asserted in each proceeding." (citations omitted)).

Turning to the individual officers, the undersigned first will assume (without deciding) that Williams, who was named as a defendant in, but not made a party to, the first action, counts as a non-party to that action. *See Nagle v. Lee*, 807 F.2d 435, 439-40 (5th Cir. 1987). *Nagle* also supports an assumption that the "Several Unknown Juvenile Detention Officers" also named as defendants in, but not made parties to, the first action (and effectively John Doe defendants) are not in privity with Wright and Farley. *See id.* Further, Williams, Wright, and Farley, as employees of a municipal entity that was a defendant in the first action, may not claim that they are in privity with that entity. As now-United States Circuit Judge Gregg J. Costa has explained,

as defendants in section 1983 cases frequently point out, vicarious

liability (or respondeat superior) does not exist for constitutional violations. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Even if government employees engage in unconstitutional conduct, their municipal employer is not liable unless those violations resulted from the city's policy or practice. *Id.* at 658 (holding that "local governments could not be held liable under a theory of respondeat superior but rather could be held liable only when the constitutional deprivation arises from a governmental custom"). And the individual defendant enjoys a qualified immunity defense that a municipality cannot invoke. *See, e.g., Wood v. Strickland*, 420 U.S. 308 (1975). Thus a dismissal in favor of a municipality does not necessarily preclude liability on the part of the public official, and vice versa.

Because "different legal theories may be necessary to prove liability in a personal-capacity, as opposed to an official-capacity, case [and] different defenses are available to a defendant who is sued in his personal capacity [,] courts do not generally consider an official sued in his personal capacity as being in privity with the government." *Conner v. Reinhard*, 847 F.2d 384, 395 (7th Cir. 1988). Thus, "the relationships between a government and its officials justify preclusion only as to litigation undertaken in an official capacity." *Id.*

The Fifth Circuit follows this general view. In *Warnock v. Pecos Cty.*, 116 F.3d 776 (5th Cir. 1997), the plaintiff brought section 1983 claims against state district judges in their individual capacities, alleging that they refused to reappoint her in retaliation for whistleblowing. An earlier state court suit against the County had been unsuccessful. The Fifth Circuit rejected the argument that the individual defendants were in privity with the County, explaining that "[r]es judicata does not apply when the parties appear in one action in a representative capacity and in a subsequent action in an individual capacity." *Id.* at 778 (quoting *Howell Hydrocarbons*, 897 F.2d at 188).

*Benson v. City of Texas City, Tex.*, No. 3:13-CV-23, 2014 WL 948901, at *3-*4 (S.D. Tex. Mar. 11, 2014) (citations omitted and modified).

So, the defendants in the first action and Williams, Wright, and Farley lack "the substantive legal relationships that would place them in 'privity' in the traditional sense of the term, but that conclusion does not [end the inquiry into whether claim preclusion should apply here]." *Elbert v. Carter*, ___ F. App'x ____, No. 16-4077, 2018

WL 2024762, at *4 (8th Cir. May 1, 2018) (Colloton, J., concurring and dissenting).

> Where a plaintiff has sued parties in serial litigation over the same transaction; where plaintiff chose the original forum and had the opportunity to raise all its claims relating to the disputed transaction in the first action; where there was a "special relationship" between the defendants in each action, if not complete identity of parties; and where although the prior action was concluded, the plaintiff's later suit continued to seek essentially similar relief – the courts have denied the plaintiff a second bite at the apple.

*Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1288-89 (5th Cir. 1989) (collecting authority, including *Gambocz v. Yelenscics*, 468 F.2d 837 (3d Cir. 1972); characterizing "those cases" as reaching a "practical result" but refusing to make "broad pronouncements about the doctrines of mutuality or privity in this circuit"); *see also Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 17 (1st Cir. 2010) ("We, along with other circuits, have long held that claim preclusion applies if the new defendant is 'closely related to a defendant from the original action – who was not named in the previous law suit,' not merely when the two defendants are in privity." (quoting *Negrón-Fuentes v. UPS Supply Chain Sols.*, 532 F.3d 1, 10 (1st Cir. 2008); collecting cases)).

While this exception to strict mutuality – referred to as nonmutual claim preclusion – has been characterized as "generally disfavored," *N.Y. Pizzeria, Inc. v. Syal*, 53 F. Supp. 3d 962, 969 (S.D. Tex. 2014) (quoting *Novell, Inc. v. Microsoft Corp.*, 429 F. App'x 254, 261 (4th Cir. 2011)), in those cases where courts have "found privity for coconspirators," for example, "the second suit appears to be 'no more than a last desperate effort' by an unsuccessful plaintiff pursuing a 'thin claim' who 'cannot show

any good reasons to justify a second chance,' and when 'the new party can show good reasons why he should have been joined in the first action,'" *id.* at 970 (citing *Gambocz*, 468 F.2d at 842 ("the essential allegations of the second complaint parallel[ed] those of the first" and "the sole material change in the later suit was the addition of certain defendants, some of whom had been named in the original complaint as participating in the conspiracy but had not been named as parties defendant at that time"); citations omitted)); *see also Airframe Sys.*, 601 F.3d at 17-18 ("Whether a 'close and significant relationship' exists between an original defendant and a defendant only named in a later suit varies with the facts.... [But t]he common factors in these cases [are] that 'the later claims were or could have been brought against the original defendant in the original suit' and the subsequent suit tried to hold related defendants liable on related claims." (quoting *Negrón-Fuentes*, 532 F.3d at 10; 18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE ("Wright & Miller") § 4464.1, at 720 n.6 (2d ed. 2002); original brackets omitted)); *Elbert*, 2018 WL 2024762, at *5 ("After surveying the law in this area, Professor Cooper observed that the one 'cogent argument in favor of nonmutual claim preclusion is that the party to be precluded should have joined his new adversary in the original litigation.'" (quoting 18A Wright & Miller § 4464.1, at 702 (3d ed. 2017))).

District courts in Texas, considering the preclusive effect of a Texas judgment, under Texas preclusion law, have declined to apply nonmutual claim preclusion where a plaintiff previously litigated an issue only as a counterclaim in a forum not of its choosing, *see N.Y. Pizzeria*, 53 F. Supp. 3d at 970-71, and where an individual

defendant sought privity with a municipality because he was "alleged to be a conspirator with the Chief of Police in firing [the plaintiff]," *Sims*, 2015 WL 4040575, at *8 ("The circumstances the record in this case reveals do not support finding that Covington was in privity with the City for preclusion purposes. Sims's state-court petition did not allege a conspiracy between the City and Covington. The City would not have represented Covington's interest in defending against Sims's whistleblower claim; to the contrary, the City sought and would likely again seek dismissal on the basis of its own governmental immunity." (citations omitted)); *see also id.* at *9 (further rejecting this privity on the basis that Covington was not entitled to the City's governmental immunity, the basis for dismissal of the state-court action against the City).

But another court in the same district, again applying Texas law, later went the other way: "Wiggins and the City were named Defendants in the earlier suit and since all of the newly named Defendants allegedly involved in the wrongful foreclosure are sued as co-conspirators, it seems they are in privity with Wiggins and one another for *res judicata* purposes." *Melcher v. Small Bus. Loan Source, LLC*, Civ. A. No. G-14-288, 2016 WL 1274459, at *2 (S.D. Tex. Mar. 9, 2016) (distinguishing *N.Y. Pizzeria*), *rec. adopted*, 2016 WL 1259011 (S.D. Tex. Mar. 28, 2016).

And another judge in this Court has agreed with the undersigned that "[d]efendants who are members of the same government agency are generally treated as being in privity for purposes of being able to assert a res judicata defense." *Chalmers*, 2014 WL 7174289, at *6 (citing *McCoy v. Blossom*, No. 09-cv-2146, 2014 WL

-14-

1120346, at *4 (W.D. La. Mar. 20, 2014) (finding res judicata where newly-named defendants were correctional officers at the same jail as those named in previous lawsuit); citations omitted).

In *McCoy*, the court clearly (and persuasively) applied nonmutual claim preclusion:

> Defendants who are members of the same government agency are generally treated as being in privity for purposes of being able to assert a res judicata defense.
>
> Furthermore, special circumstances are required to bind a nonparty plaintiff to a judgment, but nonparty defendants (such as the new deputy defendants) may enjoy the benefits of a favorable judgment even if they would not have been bound by a judgment in the case. If preclusion is asserted against a person (Plaintiff) who properly may be bound by the judgment, 'the inquiry shifts to ask whether there is some special reason for denying its benefits to a nonparty.' Denial may be appropriate when the first litigation did not afford the plaintiff a 'full and fair opportunity' to try the issue offered for preclusion.
>
> Plaintiff had a full and fair opportunity to assert his claims against these defendants, all from the same small law enforcement agency, in the 2008 civil action, and Plaintiff's numerous filings in that case demonstrate that he was fully capable of asserting any and all claims arising out of the incidents at issue. There are no special circumstances that would warrant denying the benefit of claim preclusion to the new defendants. One of the aims of res judicata is to avoid the inefficiencies of the splitting of claims and serial litigation regarding the same incidents. Its application here will well serve those aims.

*McCoy*, 2014 WL 1120346, at *4 (citations omitted).

Here, unlike as with Donna and Mark and Chance, the detention-center-officer defendants in the earlier, first action and this newer action lack a substantive legal relationship that places them in privity in a traditional sense. But Chance seeks to hold related defendants liable for related claims without explaining why the new defendants could not have been joined as parties to the first action.

Thus, for purposes of this serial litigation, those defendants are so closely related that they should benefit from a res judicata defense. First, Chance's next friends, who ably represented his interests in the first action, chose the forum for that action. And, as between the two actions, the essential allegations are parallel; the relief sought is the same or essentially similar; and no unique defenses exist as between the applicable defendant.

A comparison of the allegations made against the individual juvenile detention center officers in the first action to the claims made against Wright and Williams in the proposed amended complaint illustrates the parallel nature of these suits and shows that the claims made here could have been made – and, as to Williams, were made – in the first action. *Compare, e.g.,* Dkt. No. 63-1 (first action compl.) at ¶ 12 ("[E]ach Detention Officer was responsible for upholding the laws of the United States and of the State of Texas. Defendant Detention Officers are used in their individual and official capacities."); ¶¶ 16 & 17 ("Detention Center staff continuously ignored [Chance].... Detention guards made it a regular custom and practice to punish detainees... Detention guards added to that punishment by taking away the detainees' mattresses, and in some instances, their clothes."); ¶ 22 ("Mrs. Clyce visited Chance on Saturday, March 8, 2008. During her visit, it was absolutely clear to her that Chance was in dire need of medical attention. Chance could barely walk, he appeared to be severely dehydrated, and he told Mrs. Clyce that he was in tremendous amount of pain. As a result, Mrs. Clyce desperately pleaded with the Detention Officers to get him medical attension, but her pleas were ignored. Mrs. Clyce even asked the

Detention Officers 'what happens if he dies in here?' Consistent with their prior actions, the Detention Officers showed no concern and simply ignored her."), *with* Dkt. No. 65-2 (proposed first amend. compl.) at ¶¶ 24, 25, & 26 ("[O]n March 3, 2008, Clyce was talking at a time he was not permitted to do so during the staffs second shift. Officer Wright wrote an incident report detailing that it took him three times to restrain Clyce to get him into his cell for talking. Officer Wright then moved Clyce from his cell into a solitary confinement cell as punishment for talking, a violation of facility policy. It was apparently used by staff for medical isolation and was also called room therapy. He was further placed on non program for medical complaints that day. Additionally, later that night a third shift employee found Clyce in solitary confinement with no mattress or bedding. On or about March 4, 2008, Clyce complained of pain to staff, noting he felt like his leg was out of socket, as a result of being restrained about three times the day before by Officer Kenneth Wright. He further alleged that Officer Wright punched him in the leg during that time period. A staff member even noted there was a problem with his gait in an incident report."); ¶¶ 30 & 31 ("On or about March 8, 2008, Shanigua Williams, a Hunt County Detention Center employee, contacted Ellis County Juvenile Services about Clyce's complaints of pain. Williams was directed by Chatrina Johnson of Ellis County Juvenile Services to take him to the emergency room for medical care if he was sick. Williams failed to send Clyce to receive appropriate medical treatment despite being told to do so. That same day, Donna Clyce went to visit Clyce and witnessed him limping and bleeding from the mouth. Donna Clyce made Hunt County Juvenile Detention Center aware of

-17-

her observations and urged that Clyce be taken to the Emergency Room, but Officer Williams again refused to send him.").

In sum, there is no good reason why Chance should now have a second chance with defendants who, for no good reason, were not joined in the first action.

The same holds true for the final defendant. Chance fails to meaningfully explain the relationship between a defendant in the first action, the Hunt County Juvenile Board, and a defendant he wishes to proceed against now: the "Hunt County Juvenile Detention Center" – or even if this defendant is a jural entity capable of being sued. For example, the Dallas County Jail is not a jural entity. *See, e.g.*, *Gonzales v. Lew Sterrett Dallas Cty. Jail*, No. 3:08-cv-1510-D, 2008 WL 4921428, at *2-*3 (N.D. Tex. Nov. 13, 2008) (collecting cases). But, even if this defendant is a jural entity, the complaint in the first action provides that the Hunt County Juvenile Board is "a specialized local entity that establishes the official policy of the Hunt County Juvenile Detention Center" and "is responsible for the implementation of the policies, procedures, practices and customs, and the acts/omissions challenged by [the first] suit," Dkt. No. 63-1 at 4. That suffices to make clear that there exists a special relationship justifying privity between the old and new defendant.

## Recommendation

The Court should deny the motion for leave to amend [Dkt. No. 65] and dismiss this action with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these

-18-

findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 22, 2018

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE